## RALPH M. COLLEMER *vs.* PRESTON PLAYER.

Waldo County. Decided November 7, 1921. Action to recover damages for personal injuries suffered through alleged negligence of defendant. The plaintiff was employed by defendant, during the fall and winter of 1917-18 as caretaker on Mark Island, owned by defendant, off the coast of Maine about three miles from Dark Harbor. On the twenty-first day of January 1918 he returned to the Island from Dark Harbor in a motor boat during a cold, stormy afternoon. For hauling up the boat beyond danger from the sea, the defendant had provided a substantially constructed railway on which ran a car or cradle; this cradle was heavily weighted with stone that it might be run down the railway into the water beneath the boat; both were then hauled upon the railway to a place of safety, by means of a rope and winch. The plaintiff was injured while removing ice from the railway in order to let the cradle run down to the water.

The case is before the Law Court upon general motion by defendant to set aside a verdict for plaintiff. The testimony of the plaintiff is the only evidence as to the circumstances of the injury.

Upon a careful examination of the record the court is constrained to find that it entirely fails to sustain the verdict upon both grounds essential to the maintenance of the action.

1. *Alleged negligence of defendant.* The declaration charges negligence in that the defendant "provided for the plaintiff's use a cradle or run-way for handling and hauling out said boat which was unsafe, unsuitable and out of repair." The evidence shows that both cradle and railway were substantially built and in good repair; whatever slight repairs were needed from time to time had been made by the plaintiff in the performance of his duty as caretaker. The unsuitableness claimed was that the cradle was too heavy for one man to handle.

However, the plaintiff testifies that the winter was severe and that during that winter he used the cradle ten or twenty times, and that on the night when he was hurt his wife, a small woman, alone turned the winch and hauled up the cradle loaded with rock, so that he could get out from under it.

But the case shows affirmatively that his injury cannot be attributed to any unsuitableness of the railway or cradle but to the action of the elements, during a severe wintry storm. He testifies:

"Q. How far had you gotten the cradle down at the time of your injury? A. Probably half way or nearly half way.

Q. It was cold? A. Very cold; the sea coming up would make ice and it would freeze as fast as it struck. It would freeze right in the air.

Q. It was very cold? A. Yes.

Q. And was sleeting? A. Yes.

Q. And very wet? A. Yes.

Q. All the trouble you were having was caused by the weather? A. Caused by the weather and by the sea, I suppose that caused the sea to be bad.

Q. If you had not had such a cold day and such a sea running, you wouldn't have had any trouble? A. I had had a great deal of trouble before that with ice-cakes.

Q. You can push those out of the way? A. You can if they don't weigh too many tons.

Q. So that the trouble you were having that night in the dark was with the elements, wasn't it? A. Pretty much.

Q. You don't blame Mr. Player for that? A. No, I don't blame Mr. Player for that, and I don't think it was any of my fault."

2. *Contributory negligence of plaintiff.* In that winter's storm the ice formed on the railway preventing the weighted cradle from running down to the water. The plaintiff accordingly slacked the rope for a foot or more and then removed the ice from the railway letting the cradle run down the length of the slack rope; he then repeated the operation. While so doing he placed himself directly in front of the cradle and was injured. He describes the accident as follows:

"Q. This particular time that you worked there some time, just tell us what you did immediately before you received your injury? A. Well, I let my rope out possibly a foot or a foot and a half, and I tried to pry it down with a stick I had, and I couldn't start it; and I took my crow-bar and went down in front of it.

Q. What do you mean by in front of it? A. The end that was going down toward the water.

Q. Where did you go down there? A. I went right down around the north side of it and knocked the ice off of the north rail.

Q. Where were you then, inside or outside of the rail? A. I was right outside when I was at the north rail.

Q. North of the north rail then? A. Yes, sir.

Q. What did you say you cleaned the ice off with? A. With a crow-bar.

Q. An iron bar? Is it square on one part of it? A. I think down towards the point it was square.

Q. After cleaning the north rail off, what did you do? A. Well, I started to go across to the other rail, and my foot slipped or both of my feet rather slipped, and when I slipped my feet went toward the table, and I suppose the bar I had in my hand—

Q. Never mind what you suppose,—what became of the bar you had in your hand? A. The bar I know hit the cradle, and as far as I know I hit it myself when I fell; and the cradle rolled on me and caught my foot.

Q. How far were you from the cradle when you were going across to the other rail? A. I should say, I always took precaution to be careful,—when I started I was probably two feet away, and but when I slipped I got too close to the cradle."

ALSO ON CROSS-EXAMINATION:

"Q. Just before you got hurt, if I understand you correctly, you took your crow-bar and went down in front of the car on one side and

knocked the ice off the rail on that side, and then passed across the track in front of the car to knock the ice off on the other side? A. Yes.

Q. And while you were on the track, your bar fell on the car or you fell on the car and the car came down on you? A. Yes.

Q. What made the car start up so suddenly? A. The bar that struck the car.

Q. You had removed the cakes out of the way? A. The cakes were out of the way because I had removed those out of the way.

Q. You had got the ice off of one track? A. Got it off of both as I supposed.

Q. You say you had loosened the rope up on the top so that the rope was slack? A. Yes, sir.

Q. The rope wasn't holding the car? A. No.

Q. The car was loaded with rock frozen on and was very heavy? A. Yes, sir.

Q. And the car was on that track? A. Yes, sir.

Q. And you had removed the cakes of ice from in front of that car and you removed the ice as far as you could from both tracks? A. Yes, sir.

Q. And knowing that, you walked in front of that car? A. Yes, sir, because I knew there was ice on the other rail, I didn't know how much, but I knew there was ice there."

Such voluntary exposure to danger falls nothing short of negligence. The cradle was not over twelve feet long and by going around the upper end he would have avoided all danger; the ice would not have appreciably increased in the time required to do so.

The verdict is so clearly wrong as to require us to set it aside. Motion sustained. Verdict set aside. New trial granted. *A. S. Littlefield*, for plaintiff. *Andrews, Nelson & Gardiner*, for defendant.